UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

RANDALL M. GORNAL,                )        CIVIL ACTION NO. 4:19-CV-2211
                    Plaintiff     )
                                  )
        v.                        )
                                  )        (ARBUCKLE, M.J.)
ANDREW SAUL,                      )
                    Defendant     )

<u>MEMORANDUM OPINION</u>

## I.    INTRODUCTION

Plaintiff Randall M. Gornal, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 12). After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision is AFFIRMED.

II.     BACKGROUND & PROCEDURAL HISTORY

On May 14, 2018, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 11).  In this application, Plaintiff alleged he became disabled as of June 30, 2016, when he was forty-seven years old, due to the following conditions: chronic foot pain, chronic right foot spasms, lower back pain radiating into right leg, crush foot injury, and right tarsal tunnel syndrome. (Admin. Tr. 150). Plaintiff alleges that the combination of these conditions affects his ability to sit, stand, walk, operate foot controls with his right foot, climb stairs, bend, and kneel. (Admin. Tr. 30-39). Plaintiff has at least a high school education. (Admin. Tr. 19). Before the onset of his impairments, Plaintiff worked as a housekeeping aid and forklift operator. (Admin. Tr. 19).

On August 24, 2018, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 11). On September 26, 2018, Plaintiff requested an administrative hearing. *Id*.

On June 17, 2019, Plaintiff, assisted by his counsel, appeared and testified during a hearing before Administrative Law Judge Richard Zack (the "ALJ"). *Id*. On July 3, 2019, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 22). On August 16, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 104).

On October 23, 2019, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1).

On December 27, 2019, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. (Doc. 1, ¶ 8). As relief, Plaintiff requests that the Court reverse the Commissioner's final decision denying Plaintiff's application and award benefits, or in the alternative, remand this case for a new administrative hearing. (Doc. 1, p. 2).

On March 9, 2020, the Commissioner filed an Answer. (Doc. 9). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. (Doc. 9, ¶ 7). Along with his Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 10).

Plaintiff's Brief (Doc. 13) and the Commissioner's Brief (Doc. 14) have been filed. Plaintiff did not file a reply. This matter is now ripe for decision.

III.    STANDARDS OF REVIEW

A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also*

20 C.F.R. § 404.1505(a).[1] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations

---

[1] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on July 3, 2019.

caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(a); *Mason*, 994 F.2d at 1064.  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was

accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

## IV.   DISCUSSION

Plaintiff raises the following issue in his Brief:

Whether the ALJ failed to evaluate the Claimant's symptoms and sufficiently explain his Decision?

(Doc. 13, p. 5). However, as presented in the brief, Plaintiff's argument appears to be two-fold. First, Plaintiff argues that the ALJ failed to account for Plaintiff's limitations beyond the full range of sedentary work. Second, Plaintiff argues that the ALJ should have included limitations related to Plaintiff's impaired concentration and need for unscheduled work breaks.

### A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his July 2019 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through September 30, 2017. (Admin. Tr. 13). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between June 30, 2016 (Plaintiff's alleged onset date) and September 30, 2017 (Plaintiff's date last insured) ("the relevant period"). *Id*. At step

two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: status-post crush injury to the right foot, tarsal tunnel syndrome in the right lower extremity, and chronic pain in the right foot. *Id*. The ALJ also found that Plaintiff had the following medically determinable non-severe impairments: hypertension and anxiety. *Id.* At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 15).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in sedentary work as defined in 20 C.F.R. § 404.1567(a) subject to the following limitations:

> He could lift and carry ten pounds occasionally and two to three pounds frequently. The claimant could sit for six to eight hours and stand and walk for two hours in an eight-hour workday. The claimant could do occasional climbing of a few steps or stairs or up a ramp. The claimant could climb ladders or scaffolds or work in a dangerous work environment around unprotected dangerous heights, unprotected dangerous machinery or where he would be exposed to excessive vibrations. The claimant could perform frequent balancing, stooping, kneeling, crouching and crawling. The claimant would have the ability to use his upper extremities and his hands for reaching, handling, fingering and feeling of objects on a continuous or constant basis. The claimant would be limited in the right lower extremity from activities that would involve pushing pedals or controls.

(Admin. Tr. 16).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 19). At step five, the ALJ found that, considering Plaintiff's RFC, age, education and work experience, Plaintiff could engage in other work that existed in the national economy. *Id*. To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: order clerk (DOT #209.567-014; bench assembler (DOT #713.687-018); and system monitor (DOT #379.367-010). (Admin. Tr. 21).

B.    WHETHER THE ALJ FAILED TO INCLUDE LIMITATIONS BEYOND THE
      FULL RANGE OF SEDENTARY WORK

The Commissioner's regulations provide the following definition of "sedentary" work:

> Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). Social Security Ruling 83-10 provides the following additional guidance:

> The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required

occasionally and other sedentary criteria are met. By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.

"Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

1983 WL 31251 at *5.

Plaintiff argues:

Additionally, the ALJ did not issue a reasoned decision as there is internal inconsistency within the Decision. In the Decision the ALJ acknowledged that Mr. Gornal had additional limitations beyond the full range of sedentary work. In this regard the ALJ stated, "However, the claimant's ability to perform all or substantially all of the requirements of this [sedentary] level of work was impeded by additional limitations." (R. 21). The ALJ referenced these additional limitations in the third hypothetical presented to Ms. Abraham, but then failed to articulate them and apply them in his analysis in the Decision. Had the ALJ articulated the additional limitations that he properly noted in his third hypothetical to Ms. Abraham and applied same he would have reached the same conclusion as Ms. Abraham; that is that the order clerk, bench assembler, and system monitor jobs were no longer applicable and there would be no other work available to Mr. Gornal. (R. 44). Instead, the ALJ based his Decision on Ms. Abraham's testimony in response to the second hypothetical, which is a hypothetical directly at odds with the evidence and the ALJ's own concession that Mr. Gornal had additional limitations beyond the full range of sedentary work, and then the ALJ improperly concluded that Mr. Gornal could perform the jobs identified by Ms. Abraham under that unreliable scenario, i.e. the order clerk, bench assembler, and the system monitor. In doing so, the ALJ rendered a Decision not based on

> substantial evidence and without a clear articulation of the facts or a
> sufficient explanation for his reasoning. Accordingly, the case should
> be remanded back to an ALJ to conduct a new hearing.

(Doc. 13, pp. 11-12).

> In response, the Commissioner argues:

> Before starting on defense of the ALJ's RFC assessment, the
> Commissioner would like to explain that the ALJ did not find that
> Plaintiff "can perform the full range of sedentary light work" as
> Plaintiff alleges (Pl.'s Br. at 5). Rather, as mentioned above, the ALJ
> found that Plaintiff was reduced to a limited range of sedentary work.
> This distinction is important because the ALJ's RFC assessment was
> more than a blanket recital of the regulations and confirms that he
> carefully captured many of Plaintiff's alleged limitations.

(Doc. 14, pp. 13-14).

As Plaintiff notes, there is an error in the ALJ's RFC assessment. In his RFC

assessment, the ALJ found that Plaintiff "*could* climb ladders or scaffolds or work

in a dangerous work environment around unprotected dangerous heights,

unprotected dangerous machinery or where he would be exposed to excessive

vibrations." (Admin. Tr. 16) (emphasis added). In the hypothetical question posed

to the VE, the ALJ included a limitation that Plaintiff "*would _not_ be able to* climb

ladders or scaffolds or work in dangerous environment, around unprotected

dangerous heights, unprotected dangerous machinery, or where he is exposed to

excessive vibrations." (Admin. Tr. 41) (emphasis added).

Reading the RFC assessment as written in the ALJ's decision, the only erosion

to the sedentary occupational base cited by the ALJ is a limitation to only

"occasional" stair climbing. However, the VE testimony relied on by the ALJ to support the decision in this case includes more limitations (the inability to climb ladders or scaffolds, work in a dangerous environment, work around unprotected heights, work around unprotected machinery, be exposed to be exposed to excessive vibration). The Commissioner does not recognize what appears to be a typo (the omission of the word "not" between the words "could" and "climb") in the RFC in the ALJ's decision or address whether this error had an impact on the outcome of this case. Although Plaintiff alludes to the typo (characterizing it as an internal inconsistency in the decision), he does not address whether it resulted in any prejudice to him. I find that it does not.

The ALJ's decision is supported by a hypothetical that includes the additional limitations. Thus, the omission of the word "not" in the ALJ's RFC assessment would not change the outcome in this case. Therefore, I am not persuaded that remand is required to correct this error.

C.   WHETHER THE ALJ ADEQUATELY EVALUATED PLAINTIFF'S TESTIMONY, SUBJECTIVE COMPLAINTS, AND MEDICAL EVIDENCE AS A WHOLE

At several places in his brief, Plaintiff argues that the limitations set forth by the ALJ did not adequately account for the limitations established by "Mr. Gornal's testimony, his subjective complaints, and the medical evidence as a whole." (Doc.

13, p. 10). I construe this as an argument that the ALJ did not properly evaluate Plaintiff's testimony, subjective complaints, or the medical evidence as a whole.

Plaintiff does not cite what "medical evidence" or "subjective complaints" (which I infer are statements made by Plaintiff to his physicians in treatment records) he is referring to. Absent any citation to what evidence was not properly considered or explanation as to why (under the regulations) the ALJ erred, I am not persuaded by Plaintiff's argument that remand is required.

However, Plaintiff's testimony (which I infer to be his *hearing* testimony) is readily identifiable in the record. In his decision, the ALJ summarized Plaintiff's hearing testimony as follows:

> The claimant is alleging disability due to chronic right foot pain and spasms, lower back pain radiating into the right leg, nerve damage, crush foot injury and right tarsal tunnel syndrome (Exhibit B2E). At the hearing in this matter, the claimant testified that he has constant pain in the foot, lower leg and back. The claimant testified he spasms three to four times a day. The claimant testified his foot also gets numb, tingles, swells and turns purple color. The claimant testified pushing the pedals on a car puts stress on his foot. The claimant testified he is unable to sit too long or walk too far. The claimant testified he does not sleep well due to foot pain and spasm. The claimant testified his pain level is a seven to eight out of ten even on a good day. The claimant testified he walks with a limp and slower than normal. The claimant testified he could sit for seven to ten minutes before feeling uncomfortable (Hearing Testimony).

(Admin. Tr. 16-17).

In evaluating Plaintiff's statements about his symptoms, the ALJ "partially accepted the statements, but concluded that the statements were not entirely consistent with the objective medical evidence. Specifically, the ALJ stated:

> In addition to the diagnostic and clinical evidence discussed above, the statements and activities of the claimant do not support greater limitations than provided in the above residual functional capacity. The claimant testified he currently takes Motrin and a nerve pain medication. The claimant testified he does get some relief from his medication. The claimant testified he lived with his mother, but she has passed away, and he is currently living alone. The claimant testified he does not have trouble dressing himself. The claimant testified he is able to take care of the household chores, but it takes him longer and he has problems kneeling and bending. The claimant testified he pays a person to do the outside chores. The claimant testified he is able to take a bus to go grocery shopping and he was able to walk the stairs in the building on the day of his hearing. The claimant testified that when he goes grocery shopping, he only gets what he can carry on the bus. The claimant testified he no longer does physically demanding activities, such as dancing, playing basketball or lifting weight, which is consistent with the above residual functional capacity. The claimant testified he does not sleep well due to foot pain and spasm. However, the records does not show significant deficits related to disrupted sleep (Exhibit B8F). As such, the claimant's testimony is partially accepted, while it was candid and supports some limitations, it is not entirely consistent with the level of limitation alleged by the claimant or with the objective medical evidence as discussed above.

(Admin. Tr. 18).

In response, the Commissioner argues:

> In the present case, the ALJ followed the above regulatory evaluation process. After carefully considering the evidence of record, the ALJ found that Plaintiff had medically determinable impairments that could reasonably be expected to cause the alleged symptoms (Tr. 17). However, the alleged intensity, persistence, and limiting effects of Plaintiff's symptoms were not entirely consistent with the medical

evidence and other evidence in the record (Tr. 17). In reaching this conclusion, the ALJ thoroughly considered Plaintiff's subjective complaints, the objective medical evidence, Plaintiff's treatment course, the effectiveness of her [sic] treatment modalities, statements made by Plaintiff and his medical sources, and his daily activities (Tr. 17-18). The noted how during the relevant period from June 30, 2016 to September 30, 2017:

- Plaintiff remained independent, living alone, dressing himself, managing indoor chores, and shopping for groceries by bus (Tr. 18, referring to Tr. 30-32).
- Plaintiff's chiropractor opined that back problems did not preclude work (Tr. 18, referring to Tr. 320).
- Plaintiff received relief from Motrin and Gabapentin (Tr. 18, referring to Tr. 34).
- Straight leg raining test was negative (Tr. 17-18, referring to Tr. 331, 355, 409).
- Plaintiff's treatment was conservative and clinical findings remained unchanged over time (Tr. 18).

In short, in light of the above, substantial evidence supports the ALJ's determination that Plaintiff did not have disabling limitations. Remand for reconsideration of Plaintiff's subjective complaints is unnecessary.

(Doc. 14, pp. 17-18).

The Commissioner's regulations define "symptoms" as the claimant's own description of his or her impairment. 20 C.F.R. § 404.1502(i). The ALJ is not only permitted, but also required, to evaluate the credibility of a claimant's statements about all symptoms alleged and must decide whether and to what extent a claimant's description of his or her impairments may be deemed credible. In many cases, this determination has a significant impact upon the outcome of a claimant's application, because the ALJ need only account for those symptoms – and the resulting

limitations – that are credibly established when formulating his or her RFC assessment. *Rutherford*, 399 F.3d at 554. To facilitate this difficult analysis, the Commissioner has devised a two-step process that must be undertaken by the ALJ to evaluate a claimant's statements about his or her symptoms.

First, the ALJ must consider whether there is an underlying medically determinable impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptom alleged. 20 C.F.R. § 404.1529(b). If there is no medically determinable impairment that could reasonably produce the symptom alleged, the symptom cannot be found to affect the claimant's ability to do basic work activities. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029.

Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms which can be reasonably attributed to a medically determinable impairment. 20 C.F.R. § 404.1529(c)(1). Symptoms will be determined to reduce a claimant's functional capacity only to the extent that the alleged limitations and restrictions can reasonably be accepted as consistent with objective medical evidence and other evidence of record. 20 C.F.R. § 404.1529(c)(4). However, an ALJ will not reject statements about the intensity, persistence, or limiting effects of a symptom solely because it is not substantiated by objective evidence. 20 C.F.R. § 404.1529(c)(3). Instead, the ALJ will evaluate the extent to which any

unsubstantiated symptoms can be credited based on the following factors: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; any factor that precipitates or aggravates the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her pain or other symptoms; any treatment, other than medication, the claimant receives or has received for relief of his or her pain or other symptoms; any measures the claimant uses or has used to relieve his or her pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and any other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3).

An ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness's demeanor and credibility. *Frazier v. Apfel*, No. 99-CV-715, 2000 WL 288246, at \*9 (E.D. Pa. Mar. 7, 2000) (*quoting Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). An ALJ is not free to discount a claimant's statements about his or her symptoms or limitations for no reason or for the wrong reason. *Rutherford*, 399 F.3d at 554.

Although Plaintiff argues that the ALJ's evaluation of his hearing testimony is incorrect, he does not explain why and does not identify any statement that was

improperly discounted. After reviewing Plaintiff's hearing testimony and the ALJ's written evaluation of it, I am not persuaded that remand is required for further evaluation of Plaintiff's statements. The ALJ's summary of Plaintiff's testimony appears to be accurate and the ALJ's explanation for "partially accepting" that testimony demonstrates that the relevant factors under the Commissioner's regulations were considered.

D. WHETHER THE ALJ'S RFC ASSESSMENT ACCOUNTS FOR ALL OF PLAINTIFF'S CREDIBLY ESTABLISHED LIMITATIONS

The ALJ posed multiple hypothetical questions to the vocational expert during the administrative hearing. Plaintiff's argument relates to the hypothetical question posed to the VE by the ALJ. Those questions, and the VE's responses to them have been reproduced below:

Q   I'm going to ask you some hypothetical questions and I want you to assume for these questions that we would have a hypothetical claimant who has the same vocational profile as our claimant here today has and for the first hypothetical question, let's assume at least in some point in time I would find that the claimant would have an ability to occasionally lift and carry 20 pounds/10 pounds frequently with normal breaks throughout the workday; he could sit for up to six hours; walking and standing, however, would be limited to no more than four hours; he would do occasional climbing of a few steps or stairs or up a ramp; he would not be able to climb ladders or scaffolds or work in dangerous environment, around unprotected dangerous heights, unprotected dangerous machinery, or where he is exposed to excessive vibrations; the claimant otherwise could do frequent balancing, stooping, kneeling, crouching, and crawling; now the hypothetical claimant would have the ability to use his upper extremities and his hands for reaching, handling, fingering, and

feeling objects on a continuous or constant basis; the hypothetical claimant would have a restriction n terms of using the right lower extremity for activities that would involve pushing pedals or controls with that lower extremity.

Would this hypothetical claimant with that RFC be able to do any of his past work?

A   No, Judge, not based on this hypothetical.

Q   Would there be other occupations you might suggest for this individual?

A   Yes, Your Honor. Based on this hypothetical, I do believe there would be light occupations existing in the economy based upon the limitations in regard to standing and walking, I believe we're looking at light jobs that would afford the opportunity to intermittently alternate positions between sitting and standing and being able to perform these jobs either sitting or standing and based on that, I do believe we're looking at a 50 percent reduction of the numbers so when I provide the examples, I'll reduce the numbers, Your Honor.

One representative example, a folder and that's described in the DOT as a light, unskilled job, and the SVP would be a 2; national numbers reduced would be 201,070; Pennsylvania would be 8,775; a DOT is 789.687-066.

One moment please. A second, sorter, which is described in the DOT as a light, unskilled, and the SVP is 2; national numbers would be 115,320; Pennsylvania would be 1,410; a DOT is 222.687-010.

One moment Judge. A third, a labeler position; light and unskilled; the SVP would be a 2; national numbers would be 146,040; Pennsylvania would be 9,710; and a DOT would be 209.587-034.

Q   If the hypothetical claimant had a somewhat reduced RFC to a sedentary level which would mean he could only lift and carry 10 pounds occasionally/2 or 3 pounds frequently; again, he could

sit for six to eight hours, but standing and walking would be limited to only two hours.

A     Um-hum.

Q     And we'll keep all the other elements present from that first hypothetical question in terms of—

A     Okay.

Q     --other items. Now would there still be jobs for this individual?

A     Yes. Judge, at that point, we're looking at work that's sedentary. Representative examples, one, an order clerk described in the DOT as sedentary; unskilled; the SVP is a 2; national numbers would be 169,120; Pennsylvania would be 4,930; a DOT would be 209.567-014.

A second would be a bench assembler; sedentary and unskilled with an SVP of 2; national numbers would be 136,300; Pennsylvania would be 2,700; DOT would be 713.687-018.

And a third, system monitor; sedentary and unskilled; the SVP would be a 2; national, the numbers would be 135,390; Pennsylvania would be 5,940; a DOT 379.367-010.

Q     Would any of those three occupations allow for some sit/stand flexibility? I know you mentioned there's a sit/stand flexibility in the first one, but what about those jobs in the second hypothetical?

A     Yes, Judge, I believe it would be. I did not reduce the numbers because I do believe they would afford the opportunity to alternate intermittently during the work shift, Your Honor.

Q     A third hypothetical question, what if this hypothetical claimant because of his ongoing medical conditions and ongoing symptoms would experience the following additional limitations: let's assume this hypothetical claimant would have the need to take breaks throughout the workday and these would be in the nature of unscheduled breaks and he may need as many

as four or five unscheduled breaks to get through a full eight-hour workday and these would be in addition to the standard morning, afternoon, and lunch breaks; and this hypothetical claimant because of his pain and discomfort would also find that there would be periods of time during the day where he would lose his focus to the extent where he would be off task and if we added those periods of time up in a typical eight-hour workday, he might be off task as much as 15 to 20 percent.

With those additional factors placed wither on the first hypothetical or the second hypothetical affect the jobs you just suggested?

A        Yes, taking into consideration those factors, Judge, there would—the jobs provided in both hypotheticals would not apply. They would not be appropriate and there would be no other work for such a person.

(Admin Tr. 40-44).

Plaintiff argues:

At the hearing the ALJ posed three hypotheticals to the vocational expert, Carmine Abraham. (R. 40-44). The third hypothetical added reasonable limitations to the sedentary duty level of work that are consistent with Mr. Gornal's testimony, his subjective complaints, and the medical evidence as a whole. Those additional limitations referenced by the ALJ involved the need to take frequent and unscheduled breaks throughout the workday and that because of his pain and discomfort the hypothetical claimant would lose his focus and would be off task as much as 15 to 20 percent. (R. 43 & 44). Based on this third hypothetical Ms. Abraham opined that there would not be other work available for such a claimant. An ALJ must accurately convey all of the Claimant's credibly established limitations to the vocational expert. The ALJ was correct to pose this third hypothetical to the vocational expert as it captured the true additional limitations that Mr. Gornal experiences based on his severe impairments. Nonetheless, the ALJ disregarded this third hypothetical that he crafted and based his Decision on the second hypothetical, which presented a standard sedentary duty level restriction without any limitations. This second

hypothetical is not in keeping with Mr. Gornal's testimony, his subjective complaints, and the medical evidence. Thus, the Decision is not based on substantial evidence.

(Doc. 13, p. 10-11).

In response, the Commissioner argues:

Turning to the RFC defense, the ALJ supported his limited range of sedentary work finding with Plaintiff's statements and the clinical notes. The ALJ noted how Plaintiff testified how he only took Motrin and Gabapentin, and that they provided relief (Tr. 18, referring to Tr. 34). The ALJ noted Plaintiff's testimony that he was independent, living alone, dressing himself, and managing indoor house chores (Tr. 18, referring to Tr. 30-32). The ALJ noted how Plaintiff grocery shopped and carried his purchases on a bus (Tr. 18, referring to Tr. 32).

In discussing the clinical reports, the ALJ noted how Plaintiff's chiropractor determined that Plaintiff's back condition would not preclude work (Tr. 18, referring to Tr. 320). To this point, the ALJ noted how straight leg raising testing was negative (Tr. 17-18, referring to Tr. 331, 355, 409). The ALJ also correctly noted how Plaintiff's treatment was conservative and clinical findings remained unchanged over time (Tr. 18). Furthermore, the ALJ noted how the vocational expert identified jobs that accommodate Plaintiff's alleged. [sic] As mentioned earlier, vocational expert testified that an individual with Plaintiff's limitations could manage the demands of representative sedentary work such as order clerk, bench assembler, and system monitor (Tr. 43). The vocational expert based his testimony on the file information, his observations of these occupations, and his vocational experience (Tr. 44-45).

(Doc. 14, pp. 14-15).

One oft-contested issue in this setting relates to the claimant's residual capacity for work in the national economy. As discussed above, a claimant's RFC is defined as "the most [a claimant' can still do despite [his or her] limitations," taking into account all of a claimant's medically determinable impairments. 20 C.F.R.

Page 23 of 27

§ 404.1545. In making this assessment, the ALJ is required to consider the combined effect of all medically determinable impairments, both severe and non-severe. *Id.* Such challenges often arise in the context of challenges to the sufficiency of vocational expert testimony. It is well-established in the Third Circuit that, where a VE's testimony forms the basis of an ALJ's substantial evidence determination, the hypothetical question which elicited the VE's response must accurately reflect all of a claimant's credibly established limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (*quoting Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002)). *Rutherford* also clarifies, however, that an ALJ is not required to submit every impairment alleged by a claimant before relying on VE testimony. *Rutherford*, 399 F.3d at 554. This distinction is a subtle but important one, as the ALJ is only required to accurately convey only those limitations that are credibly established in the record to a VE for the VE's response to form the basis of a substantial evidence determination. *Id.* Credibly established limitations are:

> Limitations that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude reliance on the expert's response (*Burns*, 312 F.3d at 123). Relatedly, the ALJ may not substitute his or her own expertise to refute such record evidence (*Plummer*, 186 F.3d at 429). Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but "cannot reject evidence for no reason or for the wrong reason" (a principle repeated in *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993); Reg. § 929(c)(4)). Finally, limitations that are asserted by the claimant but that lack objective medical support may possibly be considered

nonetheless credible. In that respect the ALJ can reject such a limitation if there is conflicting evidence in the record, but should not reject a claimed symptom that is related to an impairment and is consistent with the medical record simply because there is no objective medical evidence to support it (Reg. § 929(c)(3)).

*Id.*

Plaintiff argues that the ALJ should have, but did not, include any limitation related to difficulty concentrating or account for Plaintiff taking unscheduled breaks during the workday. Plaintiff does not cite to any particular symptom or impairment that justifies either limitation and does not cite to any evidence supporting the existence of these limitations.

Plaintiff did testify that he experiences intense pain and spasm three to four times daily due to a foot crush injury. Plaintiff also reported that his pain intensity increases significantly with prolonged ambulation and cold temperatures. Plaintiff gets "moderate" relief of his pain with medications. The objective treatment records submitted in this case make clear that Plaintiff has consistently reported, and been treated for, "intense" pain. None of the treatment notes, however, discuss whether Plaintiff would be "off task" during work or whether Plaintiff would need unscheduled breaks throughout the day.

On July 24, 2018, Plaintiff's chiropractor submitted a letter. (Admin. Tr. 320). In that letter, the chiropractor opined that Plaintiff's back is stable and does not stop him from working. (Admin. Tr. 320).

Dr. Terrence Duffy treats Plaintiff's foot impairment. Dr. Duffy submitted an undated "Physician Verification Form" to the Domestic Relations Section of the Luzerne County Court of Common Pleas on Plaintiff's behalf. (Admin. Tr. 327). On that form, Dr. Duffy reported that Plaintiff suffered from chronic right foot pain and was totally disabled. *Id.* Dr. Duffy did not provide any assessment of Plaintiff's functional limitations. *Id.*

The only evidence in the record that mentions deficits in concentration is a function report submitted by Plaintiff's late mother. (Admin. Tr. 170-177). Specifically, when asked how well Plaintiff can pay attention, Plaintiff's mother reported "ok he is." (Admin. Tr. 175). Plaintiff's mother's characterization of his ability to pay attention as "ok" does not support a finding that Plaintiff would be off task 15% to 20% of each workday. With respect to unscheduled breaks, Plaintiff's mother reported that, when doing active household chores (like cleaning or laundry), Plaintiff did take breaks when he was in pain. (Admin. Tr. 172). However, taking breaks while doing physically active tasks like laundry and housework does not necessarily support a finding that Plaintiff would need four or five unscheduled breaks while doing the sedentary work contemplated in the ALJ's RFC assessment. Last, like Plaintiff's own testimony, the ALJ gave "partial" weight to his mother's statements in the function report because "the level of limitation being alleged is not fully supported by the objective evidence." (Admin. Tr. 18).

Based on the record in this case, I find that the ALJ did not err by failing to include restrictions that Plaintiff would be "off task" 15% to 20% of the workday or would need to take four or five unscheduled breaks throughout the workday in the RFC, and did not err by choosing to rely on the second hypothetical (instead of the third, which included these limitations). Although severe pain *could* result limitations like these, there is no evidence in the record here that Plaintiff's pain does cause these limitations.

## V.    CONCLUSION

For the reasons explained herein, Plaintiff's request for the award of benefits, or in the alternative a new administrative hearing, is Denied as follows:

(1) The final decision of the Commissioner is AFFIRMED.

(2) Final judgment will be issued in favor of the Commissioner of Social Security.

(3) An appropriate order shall issue.

Date: January 26, 2021                          BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge